**UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION**

CONNIE MCGIRR, et al.,

    Plaintiffs,

v.    Case No. 16-464

THOMAS F. REHME, et al.,

    Defendants.

_____/

**ORDER GRANTING LEAVE TO AMEND COMPLAINT, DENYING WITHOUT PREJUDICE DEFENDANTS' MOTIONS TO DISMISS, AND DENYING AS MOOT DEFENDANTS' MOTION IN LIMINE, DEFENDANTS' MOTION FOR PROTECTIVE ORDER, AND PLAINTIFFS' MOTION FOR TEMPORARY RESTRAINING ORDER**

Pending before the court is Plaintiffs' "Motion for Leave to File Their First Amended Complaint." (Dkt. #60) Defendants have filed responses to the motion (Dkts. ##66, 67), and Plaintiffs have filed a reply, (Dkt. #69). After reviewing the briefs, the court determines that a hearing is unnecessary. Also pending before the court are several motions, the disposition of which have either been mooted by prior determinations or are substantially affected by this court's ruling on the motion for leave to amend. (Dkts. ##13, 14, 27, 43, 52). For the following reasons, the court will grant Plaintiffs' motion for leave to file an amended complaint and deny the other motions.

**I. BACKGROUND**

Plaintiffs are 20 holders of a judgment entered by a Kentucky court against Defendant Stanley M. Chesley, all residing in either Kentucky, Virginia, or Nevada. They allege that Chesley, an Ohio state resident, embarked on a campaign to hide assets from claimants through the execution of a 2013 Wind Up Agreement, which transferred

all of Chesley's shares in an Ohio law firm in which he was the sole shareholder, Waite, Schneider, Bayless, & Chesley Co., LPA ("WSBC"), to Defendant Thomas Rehme, who is the secretary of WSBC and an Ohio resident. This agreement was executed one year prior to the entry of the Kentucky judgment, but Plaintiffs allege that a Kentucky court found that Chesley continued to use his influence over the firm to direct income derived from his transferred interest in such a way as to render him judgment-proof while still inuring to his general benefit. Plaintiffs brought claims for fraudulent transfer in this court seeking injunctive relief placing limitations on Defendants' discretion over future transfers.

Defendants filed motions to dismiss, (Dkts. ##13, 14), alleging that, pursuant to Federal Rule 19, Plaintiffs had failed to join as necessary parties the 362 other Kentucky judgment creditors. Some of these creditors are residents of Ohio, the joinder of whom would destroy the requirement of complete diversity and render this court without subject matter jurisdiction to hear the entire action. Defendants also urge the court to abstain from hearing the action, because it involves questions of state law. The court scheduled hearings on these motions as well as a motion for preliminary injunction, which led to the filing of competing motions for a protective order, (Dkts. ##27, 33), and a motion *in limine*, (Dkt. #43.) The court issued a protective order, (Dkt. #46), but did not rule on the motion *in limine*. Plaintiffs also filed a motion for an order expanding a temporary restraining order to prevent Defendants from transferring funds. (Dkt. #52.) Since then the court has issued an order to that effect and extended it twice. (Dkts. ##75, 78, 83.)

Following the conclusion of hearings on July 26, 2016, Plaintiffs filed a motion for leave to file an amended complaint. (Dkt. #60.) The proposed amended complaint would add 104 plaintiffs residing outside of Ohio whose claims exceed $75,000 and 249 plaintiffs residing outside of Ohio whose claims do not. As to the latter group, Plaintiffs urge the court to exercise supplemental jurisdiction under 28 U.S.C. § 1367. The proposed amended complaint also adds a civil conspiracy claim and asks the court to disregard the Wind-up Agreement as a sham transaction.

Defendants oppose Plaintiffs' request for leave to file an amended complaint on the basis of futility, reiterating arguments within their motions to dismiss that the omission of 8 Kentucky judgment creditors residing in Ohio should not be permitted as they are necessary parties. Defendants also claim that the new counts Plaintiffs seek to add are not recognized under Ohio law. They argue further that the amendments will be prejudicial, as Defendants had thus far only planned to defend against 20 claimants, not several hundred. Defendants also claim that the amendments will raise abstention concerns beyond those outlined in their motions to dismiss because it will require the court to rule on unsettled questions of state law.

## II. STANDARD

Federal Rule of Civil Procedure 15(a) states that leave to amend a complaint "shall be freely given when justice so requires." Fed. R. Civ. P. 15(a)(2). Though the decision of whether to permit an amendment is within the discretion of the trial court, such discretion is "limited by Fed. R. Civ. P. 15(a)'s liberal policy of permitting amendments to ensure the determination of claims on their merits." *Marks v. Shell Oil Co.*, 830 F.2d 68, 69 (6th Cir. 1987) (citation omitted). Factors to consider are "[u]ndue

3

delay in filing, lack of notice to the opposing party, bad faith by the moving party, repeated failure to cure deficiencies by previous amendments, undue prejudice to the opposing party, and futility of amendment." *Hageman v. Signal L.P. Gas, Inc.*, 486 F.2d 479, 484 (6th Cir. 1973) (citation omitted). "Delay by itself is not a sufficient reason to deny a motion to amend." *Id.* "A proposed amendment is futile if the amendment could not withstand a Rule 12(b)(6) motion to dismiss." *Rose v. Hartford Underwriters Ins. Co.*, 203 F.3d 417, 420 (6th Cir. 2000).

### III. DISCUSSION

The court finds no record of undue delay. The initial complaint was filed only four months prior to the motion seeking leave to amend. The issues raised in Defendants' motions to dismiss were discussed at the hearing in July, and Plaintiffs moved for leave to amend shortly thereafter. Nor does the court find lack of notice to the opposing party, since the proposed amendments were made in response to Defendants' motions to dismiss. Similarly absent is any indication of bad faith on Plaintiffs' part. This is also the first time that Plaintiffs have sought leave to amend.

Defendants claim that they will be unduly prejudiced. They contend that they have already spent considerable resources defending the case, but they give the court no cause to view this expenditure as unduly prejudicial. The legal and factual issues are not significantly changed or multiplied. Plaintiffs are all claimants seeking to collect on a single, common judgment. Discovery has not even commenced. Moreover, Federal Rule 15 specifically contemplates that parties would amend pleadings in response to a Rule 12 motion. Fed. R. Civ. P. 15(a). That the amendment was sought following expenditures in the production of a motion to dismiss can hardly be considered "undue

4

prejudice." The only remaining questions are futility of amendment and whether the court should exercise supplemental jurisdiction over the plaintiffs whose claims do not meet the jurisdictional threshold.

### A. Futility of Amendment

The first argument advanced by Chesley is that the proposed amended complaint is internally inconsistent because it alleges both fraudulent transfer claims, which require a distinct transferor and transferee, and also corporate veil piercing claims, which are premised upon the view that the nominally separate parties were actually a single unitary entity. First, it is not at all clear that it is inconsistent to allege that two nominally distinct parties engaged in a fraudulent transfer while also being functionally one entity. Even accepting the claim that these theories are inconsistent, it does not render the proposed amendments futile. It is well-established that "[a] party may state as many separate claims or defenses as it has, regardless of consistency." Fed. R. Civ. P. 8(d)(3). Therefore, the court will not deem Plaintiffs' proposed amendments to be futile on this basis.

Also unavailing is Chesley's contention that the amendments are futile because their inclusion implicates questions of state law and thus would make abstention more appropriate. It is not uncommon for federal courts to interpret state law, and Defendants have not sufficiently detailed the applicability of the various abstention doctrines to convince the court that the proposed amendments are futile. Nor is the court moved by Chesley's claim that the amendments are futile because a separate, related action that Chesley brought in state court was then removed to federal court and again remanded to state court on the basis that other creditors were necessary parties. This is a

5

separate action alleging different claims brought by different Plaintiffs, who have chosen the federal forum.

### 1. Federal Rule 19

Defendants' central argument is echoed from their motions to dismiss; specifically that the approximately eight Ohio judgment creditors excluded from the proposed amended complaint are necessary and indispensible parties who must be joined under Federal Rule 19, but their inclusion would defeat the court's subject matter jurisdiction by destroying complete diversity. That their joinder would defeat the court's subject matter jurisdiction is uncontested. However, it is apparent that, even if necessary, these parties are not indispensible.

To resolve the question of joinder under Rule 19 courts employ a three-step process: 1) the court must first determine whether the absent person is necessary to the action and should be joined if possible; 2) if necessary, the court considers whether joinder is feasible, or whether joinder would destroy subject matter jurisdiction; 3) and lastly, if joinder is not possible, the court must weigh the equities pursuant to Rule 19(b) and determine if, in equity and good conscience, the suit can continue in the necessary party's absence or if the case should be dismissed because the party is indispensable. *See* Fed. R. Civ. P. 19; *Am. Express Travel Related Servs., Co., Inc. v. Bank One-Dearborn, N.A.*, 195 F. App'x 458, 460 (6th Cir. 2006).

Rule 19(a)(1) dictates that a party is necessary when either 1) "in that person's absence, the court cannot accord complete relief among the existing parties," Fed. R. Civ. P. 19(a)(1)(A); or 2) "that person claims an interest relating to the subject of the action and is so situated that disposing of the action in the person's absence may"

6

either a) "as a practical matter impair or impeded the person's ability to protect the interest," or b) "leave an existing party subject to substantial risk of incurring double, multiple, or otherwise inconsistent obligations because of the interest," Fed. R. Civ. P. 19(a)(1)(B).

Focusing on the second alternative prong of Rule 19, to deem the absent parties necessary, the court must first determine whether they have an "interest" in this ligation. The claims of the Ohio creditors arise from the same settlement and judgment and Plaintiffs have sought, as relief in this action, the transfer of all the shares of WSBC and all funds transferred from WSBC to Chesley since June 23, 2015. These shares and transferred funds are the same that the absent parties would presumably make a claim upon if they brought a similar action. Thus, the court finds that the absent parties have an interest in the subject of the litigation.

Next the court must consider whether the absent parties are so situated that adjudicating the action in their absence would either 1) as a practical matter impair or impede their ability to protect the interest or 2) would make an existing party subject to substantial risk of incurring double, multiple, or otherwise inconsistent obligations because of the interest. *See* Fed. R. Civ. P. 19(a)(1)(B). As to the first, it is easy to imagine how adjudicating this matter might practically impair or impede the absent parties' ability to recover from Chesley: if the claims of the hundreds of new Plaintiffs exhaust the pool of funds or law firm shares which have been fraudulently transferred, (and are thus subject to forfeiture) then the absent parties will have nothing to collect upon in their subsequent action.

Courts often hold that where the claims of a party and an absent party are to a common fund or asset and those claims compete or conflict, then joinder is required. *Wach v. Byrne, Goldberg & Hamilton, PLLC*, 910 F. Supp. 2d 162, 169 (D.D.C. 2012). Because the assets at issue here likely will not cover the claims of *all* the potential judgment creditors, equity would likely dictate that the funds be apportioned on a pro rata basis proportional to each judgment-creditor's claim. Additionally, if the absent parties are not joined, Defendants might be left "subject to substantial risk of incurring double, multiple, or otherwise inconsistent obligations" regarding the shares of WSBC and other funds at issue here. *See* Fed. R. Civ. P. 19(a)(1)(B)(ii). As Plaintiffs seem to concede in their briefing, nothing will prevent the absent parties from asserting claims to the WSBC shares at issue here, and should they prevail, Defendants may well be faced with competing court orders commanding the transfer of those shares to Plaintiffs in this action and successful parties in other actions. For these reasons, the court concludes that the Ohio judgment creditors are necessary parties.

The parties do not dispute that joinder of the absent judgment creditors would destroy diversity jurisdiction, and thus joining them is not feasible under Rule 19. *See* Fed. R. Civ. P. 19(a)(1); *Glancy v. Taubman Ctrs., Inc.*, 373 F.3d 656, 666 (6th Cir. 2004) (joinder is not feasible if it would destroy diversity jurisdiction). So, having concluded that the absent parties are necessary because of their competing claims to the assets at issue in this case, and joinder is not feasible, the court now turns to the third step in the analysis and considers the factors enumerated in Rule 19(b).

Rule 19(b) guides courts in their consideration of whether an action can continue, "in equity and good conscience," without the absent parties or whether it must be

8

dismissed because they are indispensable. *Glancy*, 373 F.3d at 672. "Courts are to consider at least four factors in assessing whether the action should be dismissed, including (but not limited to)," *Id.*

> (1) the extent to which a judgment rendered in the person's absence might prejudice that person or the existing parties;
> (2) the extent to which any prejudice could be lessened or avoided by:
> > (A) protective provisions in the judgment;
> > (B) shaping the relief; or
> > (C) other measures;
> (3) whether the judgment rendered in the person's absence would be adequate; and
> (4) whether the plaintiff would have an adequate remedy if the action were dismissed for nonjoinder

Fed. R. Civ. P. 19(b).

As explained above, judgment rendered without the absent parties could prejudice both the absent parties and Defendants. Fed. R. Civ. P. 19(b)(1). The absent parties may be prejudiced because their recovery in a later case might be drastically limited once Plaintiffs in this case deplete the limited fund of assets that have been fraudulently transferred. Additionally, Defendants will be prejudiced by the risk of multiple and conflicting orders because these Plaintiffs seek the transfer of assets (the WSBC shares) that could also be the subject of litigation by other plaintiffs in other courts asserting the same fraudulent transfer claims.

Despite this prejudice, the court will be able to fashion a remedy which will allow it to be lessened or avoided. The issue of exactly how to fashion such a remedy is not ripe for adjudication, but at this stage it is sufficient to say that it can be done. For example, the court could require that some small portion of the judgments paid out to Plaintiffs be set aside in escrow in the event that the Ohio claimants succeed on future

claims, or otherwise to be paid back out to Plaintiffs pro rata on a date determined by applicable statutes of limitations. The Ohio creditors would have their interests preserved at relatively small, temporary cost to the larger body of Plaintiffs, whose recovery would have, at best been limited by the resources of Defendants and split among claimants in any case. This would also prevent Defendants from being subject to conflicting orders.

The question of "adequacy" has been read to address the public interest in judicial efficiency and the desirability of resolving disputes as a whole when possible. *See* Fed. R. Civ. P. 19(b)(3); *Republic of Philippines v. Pimentel*, 553 U.S. 851, 870-871 (2008). Here, it would be more efficient, and prevent the filling of multiple parallel or related actions in various federal and state courts to allow Plaintiffs to amend their complaint to include the vast majority of the judgment creditors under a single action.

The final factor, whether the plaintiff would have an adequate remedy if the action were dismissed for nonjoinder, at most slightly favors dismissal. *See* Fed. R. Civ. P. 19(b)(4). This case could be litigated in a state court, but, as discussed at the hearing, Plaintiffs have already struggled with domesticating their judgment in state court.

In sum, the balance of the factors favors a determination that, although they are necessary parties, the Ohio judgment creditors are not indispensible. Their omission does not require dismissal. Thus, the addition of the new Plaintiffs to the amended complaint is not futile under Federal Rule 19.

## 2. Validity of Claims

Defendants argue that Plaintiffs lack standing to assert their fraudulent transfer claims against WSBC because they are not parties to the Kentucky judgment. This is irrelevant. WSBC does not have to be a party to the Kentucky judgment for Plaintiffs to sue to set aside an allegedly fraudulent transfer of assets. Defendants' citation to *Fade v. Morris* actually supports this very point, where the court found that a judgment creditor did have standing to challenge transfer of property from the judgment debtor to a transferee, and the transferee was also named as a defendant. No. 2015-A-0009, 2015 WL 9303117, 2015-Ohio-5337 (Ohio Ct. App. Dec. 21, 2015). Here it is undisputed that Chesley is a debtor to the proposed Plaintiffs, and Plaintiffs seek to set aside allegedly fraudulent transfers to the other Defendants. The standing analysis does not render Plaintiffs' proposed amendments futile.

Defendants claim that Plaintiffs' proposed addition of alter ego claims are not supported by Ohio law, which does not endorse the doctrine of reverse-veil piercing. "[The Sixth Circuit] has explained, however, that veil piercing and *alter ego* concepts are distinct." *In re Fisher*, 296 F. App'x 494, 506 (6th Cir. 2008) (explaining that Ohio recognizes alter ego claims but not reverse-veil piercing). Under the well-known maxim that "the plaintiff is the master of his complaint," courts refuse to reinterpret or add claims to the complaint to reach a result. *See, e.g., Bantom v. DTE Energy Co.*, 826 F. Supp. 2d 1069, 1071 (E.D. Mich. 2011) (Plaintiff pleading only state law claims avoided federal question jurisdiction even though federal claims were available to it). Here as well the court will not interpret Plaintiffs' valid claims as disfavored or moribund ones to force a finding of futility. Defendants argue further that the addition of the civil

conspiracy charges are also futile because Ohio does not recognize aiding-and-abetting claims except under limited circumstances. This is another false equivalency. As Plaintiffs point out, a case cited by Defendants concluded that the same plaintiffs were able to proceed on civil conspiracy claims but not able to proceed on the aiding-and-abetting charge. *Grubbs v. Sheakley Grp., Inc.*, No. 13-246, 2014 WL 202041, at *12 (S.D. Ohio Jan. 17, 2014), *report and recommendation adopted*, No. 13-246, 2014 WL 934535 (S.D. Ohio Mar. 10, 2014).

Defendants challenge that Plaintiffs have failed to meet the heightened pleading standard for fraud claims under Federal Rule of Civil Procedure 9(b), and thus as pled, their fraud claims are futile. "To plead fraud with particularity, the plaintiff must allege (1) the time, place, and content of the alleged misrepresentation, (2) the fraudulent scheme, (3) the defendant's fraudulent intent, and (4) the resulting injury." *Chesbrough v. VPA, P.C.*, 655 F.3d 461, 467 (6th Cir. 2011) (quotations omitted). The fraudulent scheme, fraudulent intent, and resulting injury is apparent from the proposed amended complaint. Plaintiffs contend that Defendants sought to use sham transactions to prevent collection on Chesley's debts, which injured Plaintiffs by preventing them from being able to enforce any judgment. As to the time, place, and content of the misrepresentations, the proposed amended complaint describes an allegedly fraudulent Wind-Up Agreement as well as various transfers allegedly in support of the fraudulent scheme with a fair degree of specificity. Plaintiffs' proposed amended complaint is not futile for failure to comply with the pleading standard of Federal Rule 9(b).

## B. Supplemental Jurisdiction

Defendants contend that the court should deny leave to amend the complaint to add any additional Plaintiffs whose claims do not meet the jurisdictional threshold. It is undisputed that at least some of the Plaintiffs' claims satisfy the jurisdictional minimum. Therefore the remaining question is whether the claims are all part of the same case or controversy:

> When the well-pleaded complaint in district court includes multiple claims, all part of the same case or controversy, and some, but not all, of the claims are within the court's original jurisdiction, does the court have before it any civil action of which the district courts have original jurisdiction? It does.

*Exxon Mobil Corp. v. Allapattah Servs., Inc.*, 545 U.S. 546, 566 (2005) (quotations omitted). Defendants argue that the judgment creditors like owners of separate homes damaged by a common disaster, all with separate claims under separate policies, and less like members of a common class. *See London v. Allstate Ins. Co.*, No. 07-8653, 2008 WL 186483, at *2 (E.D. La. Jan. 17, 2008). The instant case is not like the facts in *London*, because the claimants here are creditors under a single judgment. The only pertinent fact separating them is the amount of damages that they allege. There, the only thing uniting the various claims was a common disaster. The claims of the proposed additional Plaintiffs certainly are part of the same case or controversy as the Plaintiffs who have met the jurisdictional threshold.

Additionally, these are not "exceptional circumstances" which provide "compelling reasons for declining jurisdiction." *See Baskin v. Bath Twp. Bd. of Zoning Appeals*, Nos. 95-3042/95-3881, 1996 U.S. App. LEXIS 30686, at *21 (6th Cir. Nov. 21, 1996) (affirming refusal to exercise supplemental jurisdiction over state claims where doing so

would require the federal court to review the decision of a local zoning board). The legal issues are not meaningfully complicated by the addition of the new Plaintiffs. Therefore, the court will exercise supplemental jurisdiction over the additional Plaintiffs and permit the proposed amendments to the complaint.

### C. Miscellaneous Outstanding Motions

Though the court has not directly discussed the merits of Defendants' motions to dismiss, many of the same arguments were advanced within those briefs as those contained in the responses to Plaintiffs' motion for leave to amend the complaint. The court will not opine on the extent to which the amendments defeat Defendants' argument in the event that they wish to present them anew before the court. However, for now the court will deny their motions to dismiss without prejudice to their right to bring renewed motions tailored to the amended complaint.

As discussed above, several other pending motions have been mooted through developments in the course of this litigation. As such, the court will deny them to the extent that they conflict with any other ruling of this court.

Accordingly,

IT IS ORDERED that pursuant to Federal Rule of Civil Procedure 15, Plaintiffs' Motion for Leave to File Their First Amended Complaint (Dkt. #60) is GRANTED.

IT IS FURTHER ORDERED that Defendants' Motions to Dismiss (Dkts. ##13, 14) are DENIED without prejudice.

IT IS FURTHER ORDERED that Defendant Chesley's Motion for Protective Order (Dkt. #27) is DENIED as moot.

IT IS FURTHER ORDERED that Defendants' Motion in Limine (Dkt. #43) is DENIED as moot.

IT IS FURTHER ORDERED that Plaintiffs' Motion to Expand Temporary Restraining Order (Dkt. #52) is DENIED as moot.

s/Robert H. Cleland
ROBERT H. CLELAND
UNITED STATES DISTRICT JUDGE

Dated:  December 20, 2016

I hereby certify that a copy of the foregoing document was mailed to counsel of record on this date, December 20, 2016, by electronic and/or ordinary mail.

s/Lisa Wagner
Case Manager and Deputy Clerk
(313) 234-5522

S:\Cleland\JUDGE'S DESK\C2 ORDERS\16-464.McGirr.MotToAmend.bss.wpd