**UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION**

CONNIE MCGIRR, *et al.*,

    Plaintiffs,

v.                                              Case No. 16-464

THOMAS F. REHME, *et al.*,

    Defendants.
_____/

**ORDER DENYING PLAINTIFFS' MOTION FOR
TEMPORARY RESTRAINING ORDER AND GRANTING
PRELIMINARY INJUNCTION**

Pending before the court is Plaintiffs' Motion for Temporary Restraining Order. (Dkts. #97.) Defendants filed a response on January 24, 2017, (Dkt. #98), and no reply has followed. Plaintiffs have also recently filed supplemental motions for preliminary injunction (Dkts. ##82, 86) which expanded on their previous motion and briefings (*See e.g.*, Dkt. #4) for which this court held two full days of hearings and received numerous briefings from both sides. In addition to their response briefs in opposition to the original motion (Dkts. ##7, 9), Defendants have filed responses to the supplemental motion, (Dkts. ##86, 89), and Plaintiffs have filed a reply, (Dkt. #90). After reviewing the briefs, the court concludes that additional hearings are not necessary. For the following reasons the court will deny Plaintiff's motion for Temporary Restraining Order but will grant the motion for Preliminary Injunction.

## I. BACKGROUND

The underlying facts of this case have been described in the court's previous opinions and orders, familiarity with which is presumed. This court issued a temporary restraining order ("TRO") (Dkt. #75), after Defendant Waite, Schneider, Bayless, & Chesley Co., LPA ("WSBC") filed an action in Hamilton County Probate Court in Ohio assigning all of its assets to Mr. Eric Goering in a bankruptcy-like proceeding, which would disburse WSBC's assets among its creditors, a group which does not include Plaintiffs. The order prohibited Defendants and their agents and assignees from transferring any of WSBC's property, among other things. The court then extended its temporary restraining order twice. (Dkts. ##78, 83.) Goering then petitioned the Sixth Circuit for a writ of mandamus seeking to have the court's TRO overturned, but the Sixth Circuit denied the petition as moot after the TRO expired. *See In re: Eric Goering*, No. 16-4221 (6th Cir.). Since then, Plaintiffs attempted to substitute themselves for WSBC in a fees petition in Colorado state court (the "Rocky Flats matter") and attempted to stay or dismiss the Ohio proceedings but were unsuccessful in both instances. This court also issued an order granting Plaintiffs leave to file an amended complaint to add certain Plaintiffs and denying Defendants' motions to dismiss without prejudice in light of the new amendments. (Dkt. #92.)

Across Plaintiffs' filings, they request various forms of injunctive relief. At the very least, Plaintiffs would like a preliminary injunction prohibiting any other transfers by Defendants and their agents or assignees until later order by this court. Additionally, Plaintiffs are seeking specific relief to place themselves in a position to be more likely to

recover money that would arguably otherwise be income of Stanley Chesley, but instead is now being routed through WSBC and its assignee.

In support of their broader proposed injunctive relief, Plaintiffs argue that Chesley, against whom they are judgment creditors from a Kentucky state proceeding, has engaged in a series of fraudulent transfers through his friend, Thomas Rehme, to place all of his assets and income in WSBC in virtue of a Wind-Up agreement despite the fact that Chesley possessed 100% of the ownership interest in the firm. They contend that the assignment for benefit of creditors proceeding in Ohio state court is a sham and an effort to perform an end-run around the jurisdiction of this court. They point to an incongruence between a transfer of WSBC's assets "for the benefit of creditors" when WSBC had testified that it had no creditors. Indeed Plaintiffs suggest that the transfer was made for the benefit of Chesley's creditors with the exception of Plaintiffs, who are shut out of the Ohio action as they are not technically creditors of WSBC. They further indicate that Thomas Rehme used a trust to transfer the WSBC shares to the Assignee, a step which they argue is indicative of a fraudulent transfer and is inconsistent with WSBC's prior argument that non-Ohio lawyers cannot hold WSBC shares.

Plaintiffs also argue that it appears WSBC has not zealously pressed for the full value of its fees in the Rocky Flats case, which they claim Mr. Goering had originally valued at $20 million but now contends is valued at $4 million. Plaintiffs ask the court to issue an order granting discovery into WSBC's work and thus the proper fee amount in the Rocky Flats matter, issuing a preliminary injunction preventing WSBC and its affiliates from negotiating fees due to it, appointing Plaintiffs' counsel to negotiate on

3

behalf of WSBC, and finding Plaintiffs to be entitled to fees paid to WSBC in the Rocky Flats matter.

Plaintiffs also contend that Chesley and WSBC continue to receive payments of Castano Trust fees contrary to an order from a Kentucky court that these be paid directly to Plaintiff's counsel. They argue that Chesley reassigned his interest in the income stream to WSBC, which he continues to control, resulting in almost $2.6 million in receipts due to Plaintiffs, who request that the court order such fees be paid into the court until this matter has been resolved.

Additionally Plaintiffs assert that Chesley is attempting to sell his multi-million-dollar house, having transferred the entity which owns it to his wife for one dollar despite a value of "approximately $29 million." They allege that the home is now listed for sale at under $8 million. They seek an order restraining the sale of the home or its contents without leave of the court. They insist that time is of the essence as to each of these issues because WSBC continues to dissipate the monies among Chesley's creditors under the state action where Plaintiffs are not recognized as creditors.

In response Defendants argue that Plaintiffs' factual allegations amount to "supposition" and "innuendo," lacking a verified complaint or sworn affidavit as required under Federal Rule of Civil Procedure 65(b). Defendants also assert that the two-day hearing the court held in May of 2016 and the extensive briefings from both sides are insufficient to satisfy the hearing requirement because the Ohio proceeding was undertaken after the evidentiary hearings had closed. They also argue that numerous jurisdictional shortcomings counsel against the issuance of an injunction. Defendants' substantive objections to the motion are numerous, and even a summary thereof

formatted in a single-spaced chart totals over three pages. (Dkt. #85, Pg. IDs 1925-28.) The court will not recapitulate them each in detail here.

In response to the requests for specific relief in the most recent motion for TRO, Defendants make several other arguments. They point out that the Anti-Injunction Act and *Rooker-Feldman* doctrine both prevent this court from intervening in the state proceedings. Those proceedings–an assignment for the benefit of WSBC's creditors in Ohio probate court and a suit in Colorado where Plaintiffs were unsuccessful in replacing WSBC as the real party in interest on a fee petition–do not constitute an "emergency" to justify a temporary restraining order, nor should Plaintiffs be substituted to negotiate fees on WSBC's behalf, according to Defendants.

They also argue that, to the extent that Plaintiffs seek to enjoin the actions of Assignee or the entity which owns the residence where Chesley lives, AGRA Enterprises, LLC, those parties are not before the court and thus not subject to its jurisdiction. Defendants state that injunctive relief is inappropriate where, as here, Plaintiffs have an adequate remedy at law through recourse to the Ohio probate proceeding as a creditor to obtain whatever might otherwise return to Mr. Chesley as residue. Finally, they argue that the proposed Temporary Restraining Order does not merely seek to maintain the status quo but instead impermissibly attempts to assert control over WSBC's non-party assignee and the Ohio proceeding.

## II. STANDARD

In *Great Lakes Home Health Servs. Inc. v. Crissman*, the court explained the considerations a court should make when deciding a motion for temporary restraining order or preliminary injunction:

5

> In deciding whether a plaintiff is entitled to a temporary restraining order or preliminary injunction, courts are to consider four factors:
>
>> (1) whether the plaintiff has a strong likelihood of success on the merits;
>>
>> (2) whether [the Plaintiff] would suffer irreparable harm if preliminary relief is not issued;
>>
>> (3) whether the issuance of a preliminary injunction will not cause substantial harm to third parties; and
>>
>> (4) whether the public interest would be served by the issuance of a preliminary injunctive order.
>
> The four considerations applicable to preliminary injunctions are factors to be balanced and are not prerequisites that must be satisfied. These factors simply guide the discretion of the court; they are not meant to be rigid and unbending requirements.

No. 15–11053, 2015 WL 6667772, at *3 (E.D. Mich. Nov. 2, 2015) (quotations and citations omitted).

### III. DISCUSSION

Defendants are correct that Plaintiffs' motions are not supported by either an affidavit or a verified complaint, but this is only required where the court issues an order "without written or oral notice to the adverse party or its attorney[.]" *See* Fed. R. Civ. P. 65(b)(1). The requirement is not applicable here, as with the court's prior grants of temporary restraining orders, where Defendants clearly have notice and have filed a substantive response brief in opposition to the motion. The court is similarly unmoved by Defendants' contention that the hearing requirement is unmet.

More applicable to the instant case is the Anti-Injunction Act, which, in its entirety states:

> A court of the United States may not grant an injunction to stay proceedings in a State court except as expressly authorized by Act of Congress, or where necessary in aid of its jurisdiction, or to protect or effectuate its judgments.

28 U.S.C. § 2283.

This court cannot stay the Ohio proceedings, because the instant case does not fall into any exception. First, no party asserts that Congress expressly authorizes injunctions against state bankruptcy-like proceedings. The second exception typically fits "only two scenarios: where the case is removed from the state court, and where the federal court acquires *in rem* or *quasi in rem* jurisdiction over a case involving real property before the state court does." *Martingale LLC v. City of Louisville*, 361 F.3d 297, 302 (6th Cir. 2004) (citations omitted). This case was not removed from state court and does not involve real property.

This exception has been expanded to include certain complex class litigation that has settled or is on the verge of settlement, which is "analogous to . . . an *in rem* action . . . where it is intolerable to have conflicting orders from different courts." *Lorillard Tobacco Co. v. Chester, Willcox & Saxbe*, 589 F.3d 835, 848 (6th Cir. 2009). The court in *Jones v. Elite Emergency Servs., LLC*, explained the application of this principle:

> As indicated by the other considerations relevant to determining what state court interference would sufficiently impair the federal proceeding to justify an injunction, complexity is the sine qua non of this modern application of the necessary in aid of jurisdiction exception. However, complexity in itself is insufficient to justify an injunction. Additional considerations include whether the federal court retained exclusive jurisdiction over the action, whether and at what point the state court plaintiffs were party to and opted out of the federal action; and . . . the stage of negotiation or settlement the federal action had reached at the time an injunction of the state action is sought.

No. 3:12-CV-00203, 2016 WL 836630, at *5 (M.D. Tenn. Mar. 2, 2016).

The instant case is not a class action case near settlement. Though this case, with hundreds of Plaintiffs seeking to enforce a judgment in an underlying class action, is certainly complex, the other factors do not appear to favor a stay. Most particularly, the fact that the parties are seemingly nowhere near settlement and have only recently held their 26(f) conference is decisive.

Finally, the court has not issued a judgment in this matter. Its Extended Temporary Restraining Order (Dkt. #83) restricted the ability of Defendants and their agents and assignees from redirecting funds, among other things. However, that order expired. At this point,[1] the court will not directly issue an order staying the Ohio proceedings despite Plaintiffs' arguments that the court could do so upon findings of fact. However, this does not prevent the court from enjoining "the parties; the parties' officers, agents, servants, employees, and attorneys; [or] other persons who are in active concert or participation with [them]." Fed. R. Civ. P. 65(d)(2).

This court does not find that the *Rooker-Feldman* doctrine applies in the instant case. The Sixth Circuit has recently explained that "*Rooker-Feldman* limits federal court review of state court decisions, and the Supreme Court has explicitly held that it only applies in a limited scenario:"

> The *Rooker-Feldman* doctrine . . . is confined to cases of the kind from which the doctrine acquired its name: cases brought by state court losers complaining of injuries caused by state-court judgments rendered before the district court proceedings commenced and inviting district court review and rejection of those judgments.

---

[1] Dispositive motions from both sides remain pending which may alter this analysis going forward. (Dkts. ##99, 105.)

*Hunley v. Detroit Diesel Corp.*, No. 16-5941, 2017 WL 816236, at *3 (6th Cir. Mar. 1, 2017) (quoting *Exxon Mobil Corp. v. Saudi Basic Industries Corp.*, 544 U.S. 280, 284, (2005)). The Ohio probate proceeding was filed after the instant case, as was the fees petition in the Rocky Flats matter. *See id.* ("The case at hand meets virtually none of these requirements. . . . *Rooker-Feldman* does not apply."). Thus *Rooker-Feldman* is not applicable.

Defendants' jurisdictional arguments, in particular that complete diversity would be short-circuited by the mandatory joinder of indispensible parties, have been resolved largely by the court's decision to permit the filing of an amended complaint, though the court will take under advisement the new jurisdictional arguments raised in the motion for summary judgment (Dkt. #106.)

Plaintiffs, however, do not supply the court with any authority that would permit it to substitute them for WSBC in the Rocky Flats matter, nor is it apparent that WSBC is in any way lacking incentive to seek the highest fees it can possibly obtain. The more fees it actually collects, the more of its debt–or, as Plaintiffs claim, Chesley's–it is ultimately able to pay off. The court will not grant this relief.

This court's previous TRO's (Dkts. ##75, 78, 83) found that the Rule 65 factors favored issuance of injunctive relief against Defendants' further transfers of assets. The court finds that the circumstances to date are significantly similar and warrant a preliminary injunction to that effect. The court held that Plaintiffs had "proven a likelihood of success on the merits" as the transfer to Assignee "appear[ed] to be with the intent to frustrate the judgment creditors[,]" (Dkt. #83), and that a significant risk of irreparable harm existed in that Assignee, chosen by WSBC, was likely dissipate what

9

funds remain in a manner prejudicial to Plaintiffs as WSBC contends that they are only creditors of Chesley and thus will perhaps be entitled to some of the scraps that will remain after WSBC has disposed of the lion's share of the assets in question–an argument that they advanced in recent briefing on this motion as well. Nor does the court believe that any significant risk of harm to third parties exists here. At most, those creditors who would otherwise have obtained relief in the Ohio proceeding will have to await this court's judgment.

The parties dispute whether WSBC truly has any creditors, but the CFO of WSBC, Steve Horner testified that he could not recall any outstanding debt other than trade payables. The parties can mitigate prejudice to any such third parties via recourse to this court. (*See* Dkt. #106.) Finally, the public interest favors an order preventing the disposal of any other assets, as the hundreds of judgment creditors will likely otherwise lose their ability to recover anything while the creditors of WSBC are satisfied. Those creditors–setting aside judgment creditors in this case, counsel, Chesley, and WSBC itself–were broken into five groups and are vastly outnumbered by Plaintiffs. (Dkt. #97-3, Pg. ID 2464.)

The court sees no reason why such an order should be limited from including the interest that Defendants hold in the Castano Trust. However, the court will not include the sale of the residence. Chesley's transfer to his wife evidently occurred nearly five years prior to the filing of the instant case. Plaintiffs do not supply law explaining how this court could exercise jurisdiction over AGRA Enterprises, LLC, Chesley's wife, or reach into such a distant past to rescind the transaction to bring it within the ambit of the court's authority over Chesley.

Plaintiffs had requested a receiver to manage and preserve all payments to WSBC. As WSBC has already assigned its interests to Assignee, this request would appear moot. In any case, it is not clear that a receiver will be necessary at this stage in light of the instant order.

## IV. CONCLUSION

IT IS ORDERED that Plaintiffs' Motion for Temporary Restraining Order (Dkt. #97) is DENIED.

IT IS FURTHER ORDERED that Plaintiffs' Motion for Preliminary Injunction (Dkt. #4, 82, 86) is GRANTED as follows:

IT IS ORDERED THAT, until further order by the Court:

1. The Defendants, including all agents and assignees of Defendants, shall not assign, disburse, distribute, transfer or take any action related to any asset of WSBC, including money, outside of basic office expenses;

2. The Defendants, including all agents and assignees of Defendants, shall not negotiate or enter into any agreements pertaining to income due WSBC and/or Chesley;

3. Chelsey, including his agents and assignees, shall not directly or through anyone acting on his behalf or for his benefit take nor direct any money that could be claimed by WSBC or anyone who may owe money to WSBC;

4. WSBC, including its agents and assignees, shall not assign, disburse, distribute, transfer or take any action on any assets, including money, outside of basic office expenses;

5. Rehme, including his agents and assignees, shall not, in his capacity as secretary of WSBC and as Chesley's trustee under the 2013 Wind-Up Agreement transfer records of any kind or enter any agreements on behalf of WSBC or authorize the assignment, disbursement, distribution, transfer or take any other action on any of WSBC's assets, including money, outside of basic office expenses;

6. WSBC, including its agents and assignees, shall not make any assignments, transfers, distributions, disbursements, or other payments to Chesley or on behalf of or for the benefit of Chesley;

7. Chelsey, for himself or anyone acting on his behalf or for his benefit shall not enter agreements or take nor direct any money that could be claimed by WSBC or any person or entity who may owe WSBC money; and

8. Rehme shall not, in his capacity as secretary of WSBC and as Chesley's trustee under the 2013 Wind-Up Agreement authorize or facilitate any assignments, transfers, distributions, disbursements, or other payments to Chesley or on behalf of Chesley.

Having carefully considered the facts of this matter, the Court finds that the bond already posted by Plaintiffs in this litigation sufficient. No additional bond shall be required.

s/Robert H. Cleland
ROBERT H. CLELAND
UNITED STATES DISTRICT JUDGE

Dated: April 21, 2017

I hereby certify that a copy of the foregoing document was mailed to counsel of record on this date, April 21, 2017, by electronic and/or ordinary mail.

                 s/Lisa Wagner
                 Case Manager and Deputy Clerk
                 (313) 234-5522

S:\Cleland\JUDGE'S DESK\C2 ORDERS\16-464.McGirr.MotTROandInjunction.bss.wpd