# UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF OHIO
## WESTERN DIVISION

CONNIE MCGIRR, et al.,

      Plaintiffs,

v.

THOMAS F. REHME, et al.,

      Defendants.

Case No. 16-464

_____/

## OPINION AND ORDER RESOLVING ALL PENDING MOTIONS

On April 21, 2017, the court granted Plaintiffs' Motion for a Preliminary Injunction and ordered Defendants to refrain from assigning, distributing, disbursing, transferring, or taking any action on any assets beyond basic expenses. (Dkt. # 113.) Defendants appealed that order, arguing that it amounted to an improper exercise of jurisdiction over the Assignee who was managing many of the Defendants' assets pursuant to a proceeding in Ohio Probate Court. While that appeal was pending in the Sixth Circuit Court of Appeals, the Ohio Probate proceeding was stayed through a peremptory writ issued by the Ohio Supreme Court and was subsequently dismissed.

Meanwhile, the parties continued to file numerous motions with this court and contested which of the motions the court had jurisdiction to resolve during the pendency of Defendants' appeal. With the Sixth Circuit now having issued an opinion affirming this court's injunctive order, the parties' jurisdictional arguments are moot, and this court will address all pending motions. *See McGirr v. Rehme*, No. 17-3519, ___ F.3d __, 2018 WL 2437184 (6th Cir. May 31, 2018).

# I. BACKGROUND[1]

This case involves a previously settled mass tort action concerning the diet drug "fen-phen." Some of the plaintiffs in that case instituted an action in Kentucky state court against their attorney, now Defendant, Stanley Chesley. They alleged that he wrongfully retained money they were due from the settlement. That action resulted in a $42 million dollar judgment against Chesley jointly and severally, *see Mildred Abbott et al. v. Stanley M. Chesley, et al.*, No. 05-CI-00436 (Ky. Cir. Ct. Aug. 1, 2014), affirmed *Chesley v. Abbott*, 524 S.W.3d 471 (Ky. Ct. App. 2017), which Plaintiffs have had little, if any, luck in collecting. Sometime thereafter, Defendant Chesley was disbarred. *See Kentucky Bar Assn. v. Chesley*, 393 S.W.3d 584 (Ky. 2013). Consequently, in 2013, Chesley executed a Wind-up Agreement to close his wholly owned law firm, Waite, Schneider, Bayless, & Chesley, Co., LPA ("WSBC"). In the agreement, he named WSBC's secretary, Thomas Rehme, as trustee of the firm's assets for the purpose of terminating operations. The Kentucky Circuit Court concluded that the Wind-up Agreement was a "sham" and ordered Chesley to transfer his interest in WSBC to Plaintiffs, but he never did so. *See Chesley*, 524 S.W.3d at 477; *State ex rel. McGirr v. Winkler*, 93 N.E.3d 928, 932 (Ohio 2017).

## A. Procedural History

Plaintiffs filed this action against Chesley, WSBC, and Rehme. Plaintiffs do not

---

[1] In its opinion affirming this court, the Sixth Circuit provided a detailed factual background of this case. The court will not reiterate all of the detailed facts here, but incorporates them by reference. *See McGirr*, 2018 WL 2437184 at *1-5.

seek enforcement of their Kentucky state court judgment, rather, they have filed a separate complaint against Defendants for fraudulent transfer. (*See* Dkt. # 10, Pg. ID 330.) They allege that Defendants fraudulently transferred funds to shield Chesley from the Kentucky state court judgment against him.

In the early stages of this case, an Ohio federal court in a related class action lawsuit approved the payment of attorneys' fees from Duke Energy International, Inc. to Defendant WSBC. *See* Dkt. # 266 of *Williams v. Duke Energy*, No. 08-46 (S.D. Ohio Oct. 21, 2015). This court concluded that there was a substantial risk of irreparable harm to Plaintiffs if the fee award was given directly to WSBC; therefore, the court ordered that the funds be held on deposit with the court during the pendency of this litigation. (Dkt. # 10; Dkt. # 48, Pg. ID 1011.)

Thereafter, Rehme, still acting as trustee for WSBC, created Trustee Inc. and caused WSBC to transfer its assets to Trustee Inc., which proceeded to transfer the assets to Eric Goering. Rehme then commenced a bankruptcy-like action (known as Assignment for the Benefit of Creditors "ABC") in Hamilton County Probate Court in Ohio. In the ABC action, Goering was designated as the Assignee over all of WSBC's assets for disbursement to WSBC's creditors. Plaintiffs are judgment creditors of Defendant Chesley rather than Defendant WSBC, and therefore were not included in the ABC action.

Upon Plaintiffs' motion in this court and following extensive briefing and hearings, the court entered a temporary restraining order prohibiting, among other actions, the assignment, disbursement, distribution, transfer, or any action related to any asset of

3

WSBC, outside of basic office expenses. (Dkt # 75, Pg. ID 1842.) The court later issued a preliminary injunction containing the same terms. (Dkt. # 113.) The injunction essentially froze WSBC's financial transactions. To this end, neither WSBC nor Assignee Goering has been permitted to direct any money owed to WSBC or manage its assets, liabilities, or debts.

Defendants appealed the court's injunctive order to the Sixth Circuit. While that appeal was pending, the Ohio Supreme Court dismissed the Ohio ABC action on the grounds that the action was a "vexatious abuse of process" intended to shelter Defendant Chesley's assets from Plaintiffs. *See State ex rel. McGirr v. Winkler*, 93 N.E.3d 928, 933 (Ohio 2017). The Sixth Circuit subsequently affirmed this court's injunctive order concluding that "Chesley and his co-defendants have proven apt at moving money around to evade the plaintiffs" and the court's injunction "serves an important purpose—'to allow a victory by [the plaintiffs] to be meaningful.'" *See McGirr*, 2018 WL 2437184 at *9. (quoting *AIG Aviation, Inc. v. Boorom Aircraft, Inc.*, 1998 WL 69013, at *3 (6th Cir. 1998)) (brackets in original).

## II. DISCUSSION

Currently, ten motions are pending on the court's docket—the parties continued to file motions during the pendency of Defendants' appeal in the Sixth Circuit despite the court's jurisdictional uncertainty. The motions now include: (1) Plaintiffs' Motion for Partial Summary Judgment (Dkt. # 99), (2) Plaintiffs' Motion for Appointment of a Receiver (Dkt # 116), (3) Assignee Eric Goering's Motion to Intervene and for the Appointment of a Receiver (Dkt. # 162), (4) Plaintiffs' Renewed Motion to Appoint a

4

Receiver (Dkt. # 178, # 190), (5) Plaintiffs' Motion for Leave to File a Second Amended Complaint (Dkt. # 170), (6) Plaintiffs' Motion to Compel Production of Documents (Dkt. # 126), (7) Plaintiffs' Motion for a Scheduling Order (Dkt. # 151), (8) Plaintiffs' Motion for a Status Conference (Dkt. # 179), (9) Motion to Nullify Substitution of Trustees (Dkt. # 174), and (10) Motion to Substitute Trustee (Dkt. # 180). Additionally, the proposed intervener and Plaintiffs filed a Notice of Agreed Order Appointing Receiver. (Dkt. # 165.) The court directed Defendants to file a response indicating whether they agreed to the "Agreed Order." (Dkt. # 166.) Defendants subsequently filed a response opposing the proposed receivership. (Dkt. # 167.)

The court will address each motion.

## A. Plaintiffs' Motion for a Scheduling Order (Dkt. # 151) and Motion for a Status Conference (Dkt. # 179)

In January 2017, the parties submitted a Rule 26(f) report that offered widely divergent views on the scope and timing of discovery. (Dkt. # 94.) In March 2017, before the court was able to resolve their disagreements, Plaintiffs filed a motion for summary judgment. (Dkt. # 99.) Defendants then requested an extension of their allotted time to respond to the motion in order to pursue discovery pursuant to Federal Rule of Civil Procedure 56(d). (Dkt. # 103.) The court granted that motion. (Dkt. # 110.) However, no discovery deadline was established because the court concluded that the case may be a "proceeding ancillary to a proceeding in another court," *see* L.R. 16.2(viii); Dkt. # 91, which is an exception to Rule 16(b)'s scheduling order requirement. Due to the existence of several related state court proceedings and the issues on appeal to the

Sixth Circuit, the court refrained from entering a scheduling order at that time.

Given that related proceedings and appeals in Kentucky state court, Colorado state court, Ohio Probate court, and the Sixth Circuit Court of Appeals have all concluded, Plaintiffs have filed a motion for a scheduling order (Dkt. # 151) and Defendants have not opposed it. Plaintiffs have also filed a motion for a status conference. (Dkt. # 179.)

The court will order the parties to meet and confer to develop a revised Rule 26(f) plan that accounts for the needs of this case including any outstanding discovery and motion practice. The proposed scheduling order should first and foremost account for this order granting Plaintiffs' motion for leave to file a second amended complaint (discussed below) by setting a deadline for Defendants' answer or other response allowed under the Federal Rules of Civil Procedure as well as any time needed for discovery on the new claims. When crafting a proposed schedule, the parties should also be cognizant that the court previously denied (without prejudice pending the Sixth Circuit's decision on appea) Defendant Chesley's motion to transfer all sequestered funds to the IRS (Dkt. # 101), Defendants Rehme and WSBC's motion for summary judgment (Dkt. # 105), and Plaintiffs' motion to strike expert affidavit (Dkt. # 122). The parties should also be mindful of the court's ruling on Defendants' Rule 56(d) motion and that the court will dismiss without prejudice Plaintiffs' motion for summary judgment (as discussed below) to allow for adequate discovery.

In sum, the case schedule moving forward should provide a timeline for addressing all of these issues should the parties believe they are still pertinent to the

6

dispute. After reviewing the parties' proposal, the court will either adopt it by order or hold a conference with the parties to discuss and finalize a scheduling order.

**B. Plaintiffs' Motion for Leave to File a Second Amended Complaint (Dkt. # 170)**

Plaintiffs request leave to file a second amended complaint based on recent proceedings in Ohio State court. (Dkt. # 170.) Specifically, the Supreme Court of Ohio dismissed the probate ABC action filed by Defendant Rehme on the grounds that the action was a "vexatious abuse of process" intended to shelter Defendant Chesley's assets from Plaintiffs. *See State ex rel. McGirr v. Winkler*, 93 N.E.3d 928, 933 (Ohio 2017). Plaintiffs' amended complaint alleges that Defendants Rehme and WSBC improperly transferred WBSC's assets to Trustee Inc. and Eric Goering through a series of assignments. Georing then filed the ABC action in Ohio Probate court, which triggered all the protections afforded by the bankruptcy court and allowed him to serve as Assignee over the assets. Plaintiffs' proposed amended complaint seeks to add Trustee Inc. and Georing to their claims of conspiracy against Defendants, as well as to add claims for punitive damages against Defendants Chesley, Rehme, and WSBC based on this conduct. (*Id.* at 6445.)

According to Federal Rule of Civil Procedure 15(a)(2), after the time allotted under Rule 15(a)(1) has expired, "a party may amend its pleading only with the opposing party's written consent or the court's leave. The court should freely give leave when justice so requires." Although the rule embodies a liberal amendment policy, leave to amend may be appropriately denied "when there is 'undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments

previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, futility of amendment, etc.'" *Brown v. Chapman*, 814 F.3d 436, 443 (6th Cir. 2016) (quoting *Foman v. Davis*, 371 U.S. 178, 182 (1962)).

"[T]he party requesting leave to amend must 'act with due diligence if it wants to take advantage of the Rule's liberality.'" *Parry v. Mohawk Motors of Mich., Inc.*, 236 F.3d 299, 306 (6th Cir. 2000) (quoting *U.S. v. Midwest Suspension & Brake*, 49 F.3d 1197, 1202 (6th Cir. 1995). Delay becomes undue when it places an unwarranted burden on the court, or is prejudicial, placing an unfair burden on the opposing party. *See Bridgeport Music, Inc. v. Dimension Films*, 410 F.3d 792, 806 (6th Cir. 2005) (quoting *Morse v. McWhorter*, 290 F.3d 795, 800 (6th Cir. 2002)).

Plaintiffs request leave to amend their complaint to add claims and parties based on events that transpired after the filing of their first amended complaint; namely, Defendants' initiation of and actions concerning the Ohio Probate case. Plaintiffs have not unreasonably delayed filing their claims nor have they acted in bad faith or with a dilatory motive. Their proposed claims arise out of Defendants' actions taken during the course of this litigation. The Ohio Supreme Court found of "a pattern of misuse of the judicial process in Ohio by Chesley and WSBC to obstruct collection efforts and conceal Chesley's ongoing control of WSBC." *See McGirr*, 93 N.E.3d at 933. The court finds no reason why leave to amend should not be freely given here and further, is convinced that justice requires Plaintiffs be granted leave to amend their complaint to include allegations of fraudulent transfer related to the Ohio Probate Court ABC action.

## C. Plaintiffs' Motion for Partial Summary Judgment (Dkt. # 99)

Plaintiffs filed a motion for partial summary judgment on their fraudulent conveyance claim. They argue that there is no genuine issue of material fact that Defendant Chesley's transfer of WSBC to Defendant Rehme, and Rehme's subsequent transfer of WSBC to Trustee Inc. and Goering, constitute fraudulent transfers. (Dkt. # 99.)

The court granted Defendants' request to conduct discovery prior to summary judgment proceedings pursuant to Rule 56(d). While the parties have engaged in some discovery since that time, it is unclear whether that discovery is complete or has been sufficient to allow Defendants to respond to the pending summary judgment motion. Additionally, the landscape of this case has changed dramatically since Plaintiffs' original filing of their complaint and will change again with the filing of their amended complaint. To allow both parties a fair opportunity to be heard, the court will deny Plaintiffs' summary judgment motion without prejudice, will review the revised Rule 26(f) plan that the court has directed the parties' to develop, and will set a briefing schedule for dispositive motion practice that accounts for any outstanding discovery Defendants might reasonably need.

## D. Plaintiffs' Motion to Compel Production of Documents (Dkt. # 126)

Plaintiffs ask this court to enter an order compelling third party Clark, Schaefer, Hackett & Co ("CSH") to produce documents requested pursuant to two subpoenas duces tecum. CSH provides accounting services for Defendants Chesley and WSBC. The first subpoena requests production of:

9

> All communications and records in all forms, including but not limited to, federal, state and local income tax returns, K-1's, gift tax returns, financial statements, emails and work papers, related to Chesley Family Foundation, Chesley Family Partnership, Chesley Family Partners, LLC, Chesley Family Partners, an Ohio general partnership, 2004 Chesley Family GrantorTrust, 2007 Chesley Family Partners Trust, and/or The Stanley and Susan Chesley Foundation, filed or dated from January 1 2005 to present.

(Dkt. # 126-1, Pg. ID 6196.) The second subpoena requests production of:

> All communications and records in all forms, including but not limited to, notes correspondence, agreements, federal tax liens, federal and state income tax returns, tax transcripts, gift tax returns, extension requests, acceleration assessments, notices or requests, (Jeopardy, termination, quick or prompt), financial statements, emails and work papers related to Stanley M. Chesley, the firm [WSBC] and any other entity in which Stanley Chesley or [WSBC] has held an interest in thru December 31, 2018. This request includes all such communication with agents or attorneys. This request excludes all documents previously provided by CSH.

(Dkt. # 126-2, Pg. ID 6200.) CSH has raised six objections to the first subpoena: (1) it was improperly served by certified mail, (2) notice of the subpoena was not given to other parties before CSH was served with it, (3) the subpoena is addressed to CSH as an entity instead of specific persons, (4) the subpoena does not give CSH reasonable time to comply, (5) compliance with the subpoena would create an undue burden and expense to CSH, and (6) compliance with the subpoena puts CSH at risk to incur criminal penalties. (Dkt. # 126-3, Pg. ID 6201–02.) CSH restates the second through fifth of these objections with regard to the second subpoena, and additionally objects that the second subpoena is vague and ambiguous. (Dkt. # 126-4, Pg. ID 6210–11.)

### 1. Standard: Rule 45

Federal Rule of Civil Procedure 45 governs the subpoena process and requires:

(4) Notice to Other Parties Before Service. If the subpoena commands the production of documents, electronically stored information, or tangible things or the inspection of premises before trial, then before it is served on the person to whom it is directed, a notice and a copy of the subpoena must be served on each party.

Fed. R. Civ. P. 45 (a)(4). Regarding service, Rule 45 states:

(b) Service.

(1) By Whom and How; Tendering Fees. Any person who is at least 18 years old and not a party may serve a subpoena. Serving a subpoena requires delivering a copy to the named person and, if the subpoena requires that person's attendance, tendering the fees for 1 day's attendance and the mileage allowed by law. Fees and mileage need not be tendered when the subpoena issues on behalf of the United States or any of its officers or agencies.

(2) Service in the United States. A subpoena may be served at any place within the United States.

Fed. R. Civ. P. 45(b). Rule 45 goes on to explain:

(B) Objections. A person commanded to produce documents or tangible things or to permit inspection may serve on the party or attorney designated in the subpoena a written objection . . .

If an objection is made, the following rules apply:

(i) At any time, on notice to the commanded person, the serving party may move the court for the district where compliance is required for an order compelling production or inspection.

(ii) These acts may be required only as directed in the order, and the order must protect a person who is neither a party nor a party's officer from significant expense resulting from compliance.

(3) Quashing or Modifying a Subpoena.

(A) When Required. On timely motion, the court for the district where compliance is required must quash or modify a subpoena that:

(i) fails to allow a reasonable time to comply;

(ii) requires a person to comply beyond the geographical limits specified in Rule 45(c);

(iii) requires disclosure of privileged or other protected matter, if no exception or waiver applies; or

(iv) subjects a person to undue burden.

Fed. R. Civ. P. 45 (d)(2)(B)(i)–(ii) and (d)(3)(A)(i)–(iv).

"A subpoena issued under Rule 45 is subject to the general relevancy standard applicable to discovery under Rule 26(b)(1) ." *Vamplew v. Wayne State Univ. Bd. of Governors*, No. 12-14561, 2013 WL 3188879, at *2 (E.D. Mich. June 20, 2013) (quoting *Syposs v. U.S.A.*, 181 F.R.D. 224, 226 (W.D.N.Y. 1998)) (internal quotation omitted). "[T]he scope of discovery under a subpoena is the same as the scope of discovery under Rule 26." *Hendricks v. Total Quality Logistics, LLC*, 275 F.R.D. 251, 253 (S.D. Ohio 2011) (quoting *Barrington v. Mortage IT, Inc.*, No. 07-61304-CIV, 2007 WL 4370647, at *3 (S.D. Fla. Dec. 10, 2007)). Therefore, this court must consider whether the subpoenas' requests are "overly broad or seek[] irrelevant information under the same standards set forth in Rule 26(b) and as applied to Rule 34 requests for production." *Transcor, Inc. v. Furney Charters, Inc.*, 212 F.R.D. 588, 591 (D. Kan. 2003).

As a general matter under Rule 26(b), "[p]arties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense." Fed. R. Civ. P. 26(b)(1). However, discovery is not permitted when "[it] is unreasonably cumulative or duplicative, or can be obtained from some other source that is more convenient, less

burdensome, or less expensive [or] (ii) the party seeking discovery has had ample opportunity to obtain the information by discovery in the action." Fed. R. Civ. P. 26(b)(2)(C)(i)–(ii). Discovery is further prohibited when its burden or expense outweighs its likely benefit, considering the needs of the case, the amount in controversy, the parties' resources, the importance of the issues at stake in the action, and the importance of the discovery in resolving the issues. Fed. R. Civ. P. 26(b)(2)(C)(iii). When any of these circumstances arise, the court must limit discovery "[o]n motion or on its own." Fed. R. Civ. P. 26(b)(2)(C).

## 2. Discussion: Rule 45

CHS objects to Plaintiffs' two subpoenas on seven grounds.

First, CHS alleges that the first subpoena was not properly served, but the Proof of Service attached to it shows that it was personally served on CSH's office. (Dkt. # 126-1, Pg. ID 6194.) The court will overrule CHS's objection.

Second, CHS alleges that other parties, specifically Defendants, were not given timely notice of the subpoenas prior to service of the subpoenas on CHS. Plaintiffs' counsel timely served Defendants' counsel with notice of the first subpoena by email. (Dkt. # 126-7, Pg. ID 6223.) While tardy, Plaintiffs' counsel also served Defendants' counsel with notice of the second subpoena by email. (Dkt. # 126-8.) Defense counsel was also included in CHS's email to Plaintiffs' counsel objecting to the second subpoena. (Dkt. # 126-4, Pg. ID 6211.) The court concludes Defendants had adequate notice of the subpoenas and will overrule CHS's objection.

Third, CSH makes an odd objection based on the fact that the subpoenas are

addressed to it as an entity instead of specific persons and then argues it "has no obligation to poll each and every person employed by it either now or since 2005 to ascertain whether any or all such persons possess responsive materials." (Dkt. # 126-3, Pg. ID 6202.) As Plaintiffs point out, this is in fact the very duty that is imposed on a party subject to a subpoena. A subpoena issued pursuant to Rule 45 commands each person to whom it is directed to "produce designated documents, electronically stored information, or tangible things in that person's possession, custody, or control." Fed. R. Civ. P. 45(a)(1)(A)(iii). A company is a person for purposes of the Rule. *See Yousuf v. Samantar*, 451 F.3d 248, 254 (D.C. Cir. 2006) (holding that federal agencies are "persons" under Rule 45 and noting that "person" has included corporate bodies since Rule 45's passage in 1937). To interpret the Rule otherwise would impose an unreasonable burden on the subpoenaing party to identify the specific individual within a large corporation who possesses the documents sought. The party under subpoena must locate and produce the relevant documents in its "possession, custody, or control" absent a claim of an undue burden or other reason to quash the subpoena. Fed. R. Civ. P. 45(a)(1)(A)(iii). The court will overrule CSH's objection.

Fourth, CHS objects to the subpoenas on the basis that it has not been given reasonable time to comply. While Rule 45 requires that an entity subject to a subpoena be given reasonable time to comply, it does not specify what length constitutes a "reasonable time." The Rule states that objections "must be served *before the earlier of* the time specified for compliance or 14 days after the subpoena is served." Fed. R. Civ. P. 26(d)(2)(B) (emphasis added). This requirement implies that 14 days would be a

reasonable time for compliance. CHS was given 14 days to respond to each subpoena. (Dkt. # 126-1, 126-2.) Regardless, the court will provide CHS an additional 14 days to comply with the subpoenas following entry of this order. The court will overrule CSH's objection. The obligation to produce the requested information has been nascent since the subpoenas' filings in February and March of 2017, so time beyond these 14 days is not likely to be granted.

Fifth, CHS objects on the basis that compliance with the subpoena will impose an undue burden and expense on it. CHS argues that there is overlap between the documents sought and those produced to Plaintiffs' counsel under prior related subpoenas. (Dkt. # 126-3, Pg. ID 6202.) With regard to this overlap, Plaintiffs' counsel has assured CHS that Plaintiffs are "not requesting any documents CHS already produced" pursuant to earlier subpoenas. (Dkt. # 126, Pg. ID 6186, Dkt. # 126-3, Pg. ID 6205.) Moreover, the first subpoena requests documents regarding certain trust entities that were not explicitly included in the prior related subpoenas. And the prior subpoenas concerned only documents generated through December 31, 2015, whereas the present subpoenas include more recent documents. CHS's concern for overlap has been adequately addressed and its objection will be overruled.

Sixth, CHS cites 26 U.S.C. § 7216 and argues that federal law precludes it from complying with the subpoena insofar as the subpoena seeks tax return information. However, the statute provides exceptions to this preclusion; one of which is when the disclosure of the documents is required by court order. *See* 26 U.S.C. § 7216(b)(1)(B). The court will enter an order compelling disclosure of the relevant tax return information;

thus mooting CHS's objection.

Seventh and last, CHS objects to the second subpoena asserting it is vague and ambiguous. Particularly, CHS takes issue with the language, "This request includes all such communication with agents or attorneys." (Dkt. # 126-2, Pg. ID 6200.) CHS argues that this language "requires CSH to speculate on who or what may be an 'agent' of either Mr. Chesley or his prior firm" and "can be fairly read as commanding to production of communications with CSH's *own attorney*." (Dkt. # 126-4, Pg. ID 6211) (emphasis in original). CHS overlooks a critical modifier in the language with which it takes issue—"such." The word "such" indicates that the "communications with agents or attorneys" sought refer to those communications identified in the immediately preceding sentence—communications "related to Stanley M Chesley, the firm [WSBC] and any other entity" in which either Chesley or WSBC has held an interest in through December 31, 2016. (Dkt. # 126-2, Pg. ID 6200.) To the extent there was confusion, it has already been addressed. Plaintiffs' counsel provided the following clarification to CHS:

> CSH's communication with its own attorneys are not requested unless those attorneys were not advising you but rather acting as a conduit for communications from Mr. Chesley and/or his counsel. All other communication related to Stanley Chesley or any related entity, agent, assignee are requested. We do not request your speculation on who or what is an agent and those terms are to be broadly construed.

(Dkt. # 126-3, Pg. ID 6207.) The court concludes that the second subpoena is not vague or ambiguous and will overrule CHS's objection.

Beyond CHS's objections, the court is mindful that Plaintiffs have the burden to demonstrate that the materials they seek are within the scope of Rule 26 discovery, i.e.,

that they are "relevant to any party's claim or defense." Fed. R. Civ. P. 26(b)(1). CHS conducts ongoing accounting and tax preparation services for Defendants. Contrary to CHS's contentions, documents created since the initiation of the Wind-up Agreement are relevant to Plaintiffs' claims, particularly in light of the fact that the court will grant Plaintiffs' motion for leave to amend its complaint to add allegations of fraudulent transfer based on actions taken by Defendants in the last year. Additionally, the sought discovery is important to resolving other issues in the case, especially whether the various amounts Defendants owe to the IRS are the product of Defendants' alleged misconduct. Fed. R. Civ. P. 26(b)(2)(C)(iii). As discussed above, Plaintiffs have clarified their requests in a manner that ensures they are not cumulative, duplicative, or overly burdensome. Fed. R. Civ. P. 26(b)(2)(C)(i)–(ii). The court will grant Plaintiffs' motion to compel.

### E. Plaintiffs' Motions for Appointment of a Receiver (Dkt. # 116, 178, 190)

Plaintiffs filed motions requesting the appointment of a receiver to manage WSBC's assets. Defendants oppose the receivership. (Dkt. # 120, 121, 181, 182.) Additionally, Eric Goering and Plaintiffs filed a Notice of Agreed Order Appointing Receiver and propose John Pidcock of Conway MacKenzie to serve as receiver. (Dkt. # 165.) The court directed Defendants to file a response indicating whether they agreed to the "Agreed Order." (Dkt. # 166.) Defendants subsequently filed a response opposing the proposed receivership; they provided no opinion as to John Pidcock as the suggested receiver or the proposed terms of the receivership. (Dkt. # 167.)

### 1. Standard: Appointment of Receiver

The Sixth Circuit has never explicitly addressed whether federal or state law governs the appointment of a receiver by a district court where federal jurisdiction is based on diversity, but those circuits that have addressed the issue have held that federal law governs. *See Canada Life Assur. Co. v. LaPeter*, 563 F.3d 837, 842 (9th Cir. 2009); *Myles v. Sapta*, 139 F.3d 912 (10th Cir. 1998); *Nat'l P'ship Inv. Corp. v. Nat'l Hous. Dev. Corp.*, 153 F.3d 1289, 1291 (11th Cir. 1998); *Aviation Supply Corp. v. R.S.B.I. Aerospace, Inc.*, 999 F.2d 314, 316 (8th Cir. 1993); *Chase Manhattan Bank, N. A. v. Turabo Shopping Ctr., Inc.*, 683 F.2d 25, 26 (1st Cir. 1982).[2]

Additionally, district courts in this circuit have applied federal law when presented with a motion for appointment of a receiver. *See e.g., Vireo Sys., Inc. v. HTG Ventures, LLC,* No. 14-02359, 2016 WL 815522, at *3 (M.D. Tenn., Mar. 2, 2016); *Pension Ben. Guar. Corp. v. Evans Tempcon, Inc.,* No. 14-782, 2015 WL 1249716, at *3 (W.D. Mich., Mar. 18, 2015), *aff'd*, 630 F. App'x 410 (6th Cir. 2015); *Citizens Bank v. Cedar Fairmount Realty, Ltd.*, No. 11-1492, 2011 WL 13228872, at *4 (N.D. Ohio, Dec. 9, 2011); *De Boer Structures USA, Inc. v. Shaffer Tent & Awning Co.*, 187 F. Supp. 2d 910, 925 (S.D. Ohio 2001); and *Meyer Jewelry Co. v. Meyer Holdings, Inc.*, 906 F.

---

[2] *But see Macon Lumber Co. v. Bishop & Collins*, 229 F.2d 305, 306–07 (6th Cir. 1956) and *In re Armstrong Glass Co., Inc.*, 502 F.2d 159, 163–64 (6th Cir. 1974), wherein the Sixth Circuit held that the district court did not err in appointing a receiver under state law. Importantly, the court was not presented with any argument that the district court erred in applying state law; rather appellant in both cases argued only that the district judge erred in concluding that the standard for appointment of receiver under state law was met.

Supp. 428, 432 (E.D. Mich. 1995).[3]

Federal Rule of Civil Procedure 66 allows for a court-appointed officer to administer an estate in accordance "with the historical practice in federal courts or with a local rule." The Sixth Circuit has directed this court to a number of factors to consider in deciding whether to appoint a receiver including

> whether the property at issue is in "imminent danger of ... being lost, concealed, injured, diminished in value, or squandered," whether the defendant engaged in fraudulent conduct, "the inadequacy of the available legal remedies," the lack of less drastic equitable remedies, and the likelihood that the appointment will do more good than harm.

*Pension Ben. Guar. Corp. v. Evans Tempcon, Inc.*, 630 F. App'x 410, 414 (6th Cir. 2015) (quoting 12 Charles Alan Wright, Arthur R. Miller & Richard L. Marcus, Federal Practice and Procedure § 2983 (3d ed. 2014)). Additionally, the Sixth Circuit has established that

> A district court enjoys broad equitable powers to appoint a receiver over assets disputed in litigation before the court. The receiver's role, and the district court's purpose in the appointment, is to safeguard the disputed assets, administer the property as suitable, and to assist the district court in achieving a final, equitable distribution of the assets if necessary.

*Liberte Capital Grp., LLC v. Capwill*, 462 F.3d 543, 551 (6th Cir. 2006) (quoting 13 Moore's Federal Practice 66.02–.03 (3d ed.1999)).

## 2. Discussion: Appointment of Receiver

---

[3] Those district court cases in this circuit purporting to apply state law to appointment of a receiver, *see e.g. Steinberg v. Young*, 641 F. Supp. 2d 637, 643 (E.D. Mich. 2009), actually rely on factors originally listed in *Meyer Jewelry Co.*, 906 F. Supp. at 432, which drew the factors from federal common law in an Eighth Circuit case that explicitly held that "appointment of a receiver in a diversity case is a procedural matter governed by federal law and federal equitable principles." *Aviation Supply Corp.*, 999 F.2d at 316.

Several factors weigh heavily in favor of receivership here, but most strongly is whether Defendants have engaged in fraudulent conduct. Plaintiffs are suing Defendants for alleged fraudulent transfers of the very assets a receiver would manage if appointed. One court has already concluded that the relevant transfer agreement governing these assets was a "sham." *See Chesley*, 524 S.W.3d at 477; *State ex rel. McGirr v. Winkler*, 93 N.E.3d 928, 932 (Ohio 2017).

The Sixth Circuit confirmed this court's conclusion that Plaintiffs are likely to succeed on the merits of their claims given the "strong evidence" that the transaction Plaintiffs challenge was fraudulent. *McGirr*, 2018 WL 2437184, at *6-8 (citing Ohio Rev. Code. § 1336.04(B)(1)-(2)).

Plaintiffs also assert that this litigation has not deterred Defendants and that Defendants have committed additional fraudulent transfers since the inception of this litigation. The Ohio Supreme Court essentially agreed concluding that Defendant's ABC action was a "vexatious abuse of process" intended to shelter Defendant Chesley's assets from Plaintiffs, *see State ex rel. McGirr v. Winkler*, 93 N.E.3d 928, 932 (Ohio 2017), and was part of his "pattern of misuse of the judicial process . . . to obstruct collection efforts and conceal [his] ongoing control of WSBC," *Id.* at 933.[4]  The Sixth Circuit concluded that Defendant "Chesley has offered no reason to trust that he will

---

[4]  *See also Id.* at 933-935, wherein the Ohio Supreme Court discussed at length Chesley's "abusive litigation tactics" in related proceedings in other courts, including this court.

discontinue his years-long scheme to avoid [Plaintiffs'] $42 million judgment [against him]." *McGirr*, 2018 WL 2437184, at *9. There is ample evidence of fraudulent conduct to support an order of receivership.

If the dubious conduct of Defendants were not enough to justify receivership, recent action by the IRS necessitates appointment of a receiver to manage WSBC's assets. The IRS has issued a notice of intent to levy WSBC's $6 million in property and property rights for alleged unpaid taxes. (Dkt. # 178-2.) Defendants, bound by the injunctive order, have taken no steps to challenge the IRS through the filing of objections. The court concludes that the property here is in imminent danger of being lost or diminishing in value. *Pension*, 630 F. App'x at 415 (holding that order approving stipulation to prevent the defendant's transfer of assets was not adequate to preserve the assets and thus appointment of receiver was warranted). Appointment of a receiver will serve to protect the disputed assets—doing more good than harm. The court will grant Plaintiffs' motion and define the terms of receivership by separate court order.

### F. Assignee Eric Goering's Motion to Intervene and for the Appointment of a Receiver (Dkt. # 162)

Given that the Ohio Probate Court ABC action has been dismissed, Eric Goering no longer serves as the Assignee for Defendant WSBC's assets. Additionally, because the court will grant Plaintiffs' motion for the appointment of a receiver, Goering's motion to intervene will be denied as moot.

### G. Motion to Nullify Substitution of Trustees (Dkt. # 174) and Motion to Substitute (Dkt. 180)

Several of the Plaintiffs previously filed for bankruptcy. As a result, this court

entered an order substituting the bankruptcy trustees for those Plaintiffs-debtors' estates as the real parties in interest. (Dkt. # 148.) Plaintiff Pamela Marlowe has since filed for bankruptcy. As a result, Bankruptcy Trustee Mark Little moves this court to be substituted as the real party in interest. The court will grant the motion.

Recently, some of the bankruptcy trustees the court previously substituted in this action have filed "No Distribution Reports" in their respective underlying bankruptcy cases because no creditors filed proofs of claims in their bankruptcy cases. Consequently, the claims of those estates are abandoned back to the respective Plaintiffs-debtors of each one. Since those bankruptcy trustees are no longer parties in interest, they ask the court to nullify the portion of the court's previous substitution order naming them as parties in interest in order to reinstate Plaintiffs as the real parties in interest. (Dkt. # 174.) Defendants have no objection and concur in the motion, which will be granted as dictated in the attached order identifying the specific Plaintiffs.

## IV. CONCLUSION

Having considered the merits of each of the pending motions,

IT IS ORDERED that Plaintiffs' Motion for a Scheduling Order (Dkt. # 151) is **GRANTED** and Plaintiffs' Motion for a Status Conference (Dkt. # 179) is **DENIED AS MOOT.** The parties are DIRECTED to meet and confer to develop a revised Rule 26(f) plan and to submit the proposed plan to the court **by August 17, 2018.** The proposed plan should account for the present aspects of this case including the court's rulings on all recent motions. The parties are DIRECTED to appear telephonically for a scheduling conference on **August 29, 2018 at 3:30 pm.**

IT IS FURTHER ORDERED that Plaintiffs' Motion for Leave to File a Second Amended Complaint (Dkt. # 170) is **GRANTED.**

IT IS FURTHER ORDERED that Plaintiffs' Motion for Summary Judgment (Dkt. #99) is **DENIED WITHOUT PREJUDICE.**

IT IS FURTHER ORDERED Plaintiffs' Motion to Compel Production of Documents (Dkt. # 126) is GRANTED. CHS is DIRECTED to produce the requested documents to Plaintiffs **by August 17, 2018.**

IT IS FURTHER ORDERED that Assignee Eric Goering's Motion to Intervene and for the Appointment of a Receiver (Dkt. # 162) **is DENIED as MOOT.**

IT IS FURTHER ORDERED that Trustees' Motion to Nullify Substitution (Dkt. # 174) is GRANTED and Motion to Substitute Party by Trustee (Dkt. # 180) **is GRANTED.**

s/Robert H. Cleland_____
ROBERT H. CLELAND
UNITED STATES DISTRICT JUDGE

Dated:   August 3, 2018

I hereby certify that a copy of the foregoing document was mailed to counsel of record on this date, August 3, 2018, by electronic and/or ordinary mail.

s/Lisa Wagner_____
Case Manager and Deputy Clerk
(810) 292-6522